180201.1

Milton Springut, Esq. (MS6571)
Tal S. Benschar, Esq. (TSB0838)
KALOW & SPRINGUT LLP
488 Madison Avenue
New York, New York 10022
Tel: (212) 813-1600
Fax: (212) 813-9600

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

VAN CLEEF & ARPELS LOGISTICS, S.A. and
VAN CLEEF & ARPELS, INC,

               Plaintiffs,

               v.

JERI COHEN COHEN JEWELRY, INC.;
and JOHN DOES 1-10,

               Defendants.

-------------------------------------------------------------x



Civil Action

No.

**COMPLAINT**

Plaintiffs, complaining of defendants, through their undersigned counsel, hereby allege as follows:

## NATURE OF THE CASE, JURISDICTION AND VENUE

1.    This is an action for copyright and trade dress infringement for sale of jewelry items bearing copies of plaintiffs' proprietary jewelry designs.

2.    This Court has subject matter jurisdiction over the claims in this action arising under the Copyright and Trademark Acts pursuant to 28 U.S.C. §§ 1331 and 1338.

3.    This Court has subject matter jurisdiction over the claims in this action arising under state law pursuant to 28 U.S.C. §§ 1367 and 1338.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400.

## THE PARTIES

5.     Plaintiff Van Cleef & Arpels, S.A., is a corporation organized and existing under the laws of Switzerland, having an office and place of business at 8 Route de Chandolan, 1752 Villars-sur-Glane, Switzerland.

6.     Plaintiff Van Cleef & Arpels, Inc. is a corporation organized and existing under the laws of the State of New York, having an office and place of business at 12 West 57th Street, New York, NY 10015.  Van Cleef & Arpels, Inc. is a licensed importer of Van Cleef & Arpels brand products, and is the exclusive licensee for the sale of such products in the United States.

7.     For the purposes of this Complaint, except where specified, the interests of plaintiffs Van Cleef & Arpels, S.A. and Van Cleef & Arpels, Inc. herein are as a practical matter identical, and they are hereinafter referred collectively and interchangeably as "Plaintiffs" or "VCA."

8.     Defendant Jeri Cohen Cohen Jewelry, Inc. ("Jeri Cohen") is a corporation organized and existing under the laws of the state of New York having an office and place of business at 1036 Third Avenue, New York, New York 10021.  Defendant Jeri Cohen is transacting and doing business in this judicial district and is subject to the personal jurisdiction of this Court.

9.     Defendants John Does 1-5 (hereinafter "John Does") are individuals who are officers or managing agents of Jeri Cohen having an office and place of business at Jeri Cohen Cohen Jewelry, Inc., 1036 Third Avenue, New York, New York 10021, and are conscious

dominant and active forces behind the wrongful acts of Jeri Cohen complained of herein, which wrongful acts they have engaged in for the benefit of Jeri Cohen and for their own individual gain and benefit. Defendants John Does 1-5 are transacting and doing business in this judicial district and are subject to the personal jurisdiction of this Court.

10.     Upon information and belief, defendants John Does 6-10 are jewelers or other suppliers of infringing jewelry items to the named Defendants. Defendants John Does 6-10 are accordingly liable for copyright and/or contributory or inducement of copyright infringement and/or trade dress infringement. Defendants John Does 6-10 are transacting and doing business in this judicial district and are subject to the personal jurisdiction of this Court.

11.     Defendants Jeri Cohen Cohen Jewelry, Inc. and John Does 1-10 are collectively referenced herein as "Defendant."

## FACTS COMMON TO ALL COUNTS

### The Van Cleef & Arpels Brand and Business

12.     The Van Cleef & Arpels business has its origins in 1898, when Alfred Van Cleef married Estelle Arpels, and proceeded to open a jewelry business with her brothers at 22 Place Vendome in Paris. Plaintiffs and their affiliates and predecessors in interest are famous for the production of fine luxury watches and jewelry, innovation in watch and jewelry styles and designs, and introduction of new and important jewelry technologies, including the introduction of a patented invisible-setting technique in the 1930s. For many years, and long since before the acts of the Defendants complained of herein, VCA has been engaged in the manufacture and sale in interstate and intrastate commerce of high quality luxury watches and jewelry, rings and related goods (the "VCA Products").

**The Alhambra Jewelry Design**

13.    VCA is the owner of all rights, including the copyright, in the Alhambra Jewelry

Design (hereinafter the "ALHAMBRA Jewelry Design").    That design appears thus:



14.    The ALHAMBRA Jewelry Design is an original and creative work of VCA and

its team of designers, and such design is validly protected by copyright.  VCA is the owner of all

rights in such design.

15.    VCA owns Copyright Registration No. GP 101,958 for the ALHAMBRA Jewelry

Design, which was first received by the Copyright Office on January 7, 1976.  A copy of this

registration is attached hereto and identified as Complaint Exhibit 1 (the "ALHAMBRA Jewelry

Design Registration").

16.    On November 13, 2007 VCA recorded a document entitled "Second Statement

Regarding Copyright Registration."  A copy of the November 15, 2007 recordation is attached

hereto and identified as Complaint Exhibit 2.

**The ALHAMBRA Trade Dress**

17.    VCA's Alhambra Jewelry features a distinctive and unique combination of

elements that collectively create a particular trade dress (the "ALHAMBRA Trade Dress").  The

4

ALHAMBRA Trade Dress consists of a collocation of design elements.  The combination of all

or almost all such elements together give the jewelry a distinct overall look and commercial

impression making it instantly recognisable.  Although these elements cannot be perfectly

described in words, the following generally describes the elements of the ALHAMBRA Trade

Dress:

A quatrefoil shaped ornament comprising:

1.    four identical lobes;

2.    each lobe having a semicircular shape;

3.    the lobes having both left-right and top-bottom symmetry;

4.    an outer band;

5.    having a constant width;

6.    the outer surface of the band defining the contour of the ornament;

7.    the inner surface of the band defining an inner or central portion;

8.    having four identical cusps (inner points of the lobes) which extend about half way into the ornament;

9.    the inner portion;

10.   having a quatrefoil shape defined by the inner surface of the outer band; and

11.   which is either hollowed out or made of a single filling material, such as mother of pearl, onyx, lapis, diamonds or metal, and may include a small centered jewel.

18.    The collocation of features set forth in the above paragraph herein constitutes a

distinctive trade dress that has secondary meaning.  This design has been extensively promoted

by VCA in the United States and has achieved significant sales success.  The public has come to

recognize this design as distinctive of this line of VCA jewelry and as an indication of source of

such jewelry. The ALHAMBRA Trade Dress is thus a means by which VCA is known to the public and the trade as the sole source and origin of Alhambra jewelry.

19.     The ALHAMBRA Trade Dress is in no way functional.

**Defendants' Infringing Activities**

20.     Upon information and belief, Defendant has manufactured, sold, offered for sale and/or distributed copies of the ALHAMBRA Jewelry Design and products embodying the ALHAMBRA Trade Dress. Upon information and belief, Defendant has further manufactured, sold, offered for sale and/or distributed copies of other designs proprietary to VCA, which are protected by copyrights and/or trade dress rights.

21.     Such activities were done willfully and knowingly, knowing that such jewelry was based upon designs copied from the ALHAMBRA Jewelry Design and, where applicable, that such products are confusingly similar to the ALHAMBRA Trade Dress.

22.     No Defendant in this action has sought or received a license or authorization from the Plaintiffs for any purpose whatsoever, including for the acts described herein.

**COUNT I**

**COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 501**

23.     VCA repeats and reincorporates herein by reference each of the foregoing allegations.

24.     Defendant has infringed upon VCA's copyrights in the ALHAMBRA Jewelry Design by reproducing such designs without authorization and distributing copies thereof by sale

6

and other means, and/or contributing to or inducing the reproduction and distribution of said design.

25.    Defendant's copyright infringement, unless enjoined by this Court, will continue to cause VCA to sustain irreparable damage, loss and injury, for which VCA has no adequate remedy at law.

26.    VCA has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Defendant as aforesaid in an amount thus far not determined, but believed to be in excess of Twenty-Five Thousand Dollars ($25,000).

27.    Defendant's trade dress infringement, unless enjoined by this Court, will continue to cause VCA to sustain irreparable damage, loss and injury, for which VCA has no adequate remedy at law.

**COUNT II**

**TRADE DRESS INFRINGEMENT**
**15 U.S.C. § 1125(a)**

28.    VCA repeats and incorporates herein by reference each of the foregoing allegations.

29.    Defendant has reproduced, copied and imitated the ALHAMBRA Trade Dress in designing certain of their jewelry in a manner that is confusingly similar to the distinctive trade dress of VCA.

30.    Defendant's adoption and use of the ALHAMBRA Trade Dress constitutes trade dress infringement and upon information and belief, deliberate and willful violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

31.    The actions and conduct of Defendant complained of herein has damaged VCA and will, unless restrained, further impair, if not destroy, the value of the ALHAMBRA Trade Dress and the goodwill associated therewith.

32.    Defendant's trade dress infringement has caused VCA to sustain monetary damage, loss and injury, in an amount to thus far not determined, but believed to be in excess of Twenty-Five Thousand Dollars ($25,000).

## COUNT III

## COMMON LAW TRADE DRESS
## INFRINGEMENT AND UNFAIR COMPETITION

33.    VCA repeats and incorporates herein by reference each of the foregoing allegations.

34.    Defendant has reproduced, copied and imitated the ALHAMBRA Trade Dress in designing certain of their jewelry in a manner that is confusingly similar to the distinctive trade dress of VCA.

35.    Defendant's actions constitute common law trade dress infringement and unfair competition.

36.    The actions and conduct of Defendant complained of herein has damaged VCA and will, unless restrained, further impair, if not destroy, the value of the ALHAMBRA Trade Dress and the goodwill associated with them.

37.    Defendant's trade dress infringement has caused VCA to sustain monetary damage, loss and injury, in an amount thus far not determined, but believed to be in excess of Twenty-Five Thousand Dollars ($25,000).

38.    Defendant's trade dress infringement, unless enjoined by this Court, will continue to cause VCA to sustain irreparable damage, loss and injury, for which VCA has no adequate remedy at law.

**WHEREFORE**, Plaintiffs demand:

1.    That Defendant, its officers, agents, servants, employees and attorneys, and those in active concert or participation with them or any of them, be permanently enjoined and restrained from further copying or otherwise infringing upon Plaintiffs' copyrights identified herein.

2.    That Defendant be required to deliver up to Plaintiffs for destruction any and all goods in their possession that infringe upon the copyrights identified herein.

3.    That Defendant be required, pursuant to 17 U.S.C. § 504, to account to Plaintiffs for any and all profits derived by them, and for all damages sustained by Plaintiffs by reason of said Defendant's actions complained of herein, and/or statutory damages, which Plaintiffs may at a later time elect to recover.

4.    That pursuant to 17 U.S.C. § 505, Plaintiffs have and recover from Defendant, Plaintiffs' reasonable attorneys' fees, costs and disbursements of this civil action.

5.    That Defendant, its officers, agents, servants, employees and attorneys, and those in active concert or participation with them or any of them, be permanently enjoined and restrained:

(a)    From using in any manner the ALHAMBRA Trade Dress, alone or in combination with any other words or designs, in manner likely to cause confusion, deception, or mistake on or in connection with advertising,

offering for sale or sale of any goods not manufactured by VCA, or not authorized by VCA to be sold in connection with their respective said marks;

(b)    From representing, suggesting in any fashion to any third party, or performing any act that may give rise to the belief that Defendant, or any of its goods, are authorized or sponsored by VCA;

(c)    From passing off, inducing or enabling others to sell or pass off any goods as products produced by Plaintiffs that are not in fact genuine VCA goods, or not produced under the control and supervision of VCA and approved by VCA and

(d)    From otherwise competing unfairly with Plaintiffs in any manner.

6.    That Defendant be required to deliver up to Plaintiffs for destruction, any and all goods in their possession or under their control that were or are being advertised, promoted, offered for sale or sold in connection with the ALHAMBRA Trade Dress, whether alone or in combination with any words or designs.

7.    That Defendant be required to deliver up to Plaintiffs for destruction, any and all catalogs, circulars and other printed material in its possession or under its control displaying or promoting the goods that were or are being advertising, promoted, offered for sale or sold in connection with the ALHAMBRA Trade Dress, whether alone or in combination with any words or designs.

8.    That Defendant be ordered pursuant to 15 U.S.C. § 1116(a) to file, with the Court and serve upon Plaintiffs, within thirty (30) days of the entry of injunction prayed for herein, a

written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with permanent injunction.

9.      That Defendant be required, pursuant to 15 U.S.C. § 1117, to account to Plaintiffs for any and all profits derived by it, and for all damages sustained by Plaintiffs by reason of Defendant's actions complained of herein, including an award of treble damages as provided for statute.

10.     That Plaintiffs be awarded punitive damages.

11.     That Plaintiffs be awarded both pre-judgment and post-judgment interest on each and every damage award.

12.     That pursuant to 15 U.S.C. § 1117, Plaintiffs have and recover from Defendant, Plaintiffs' reasonable attorneys' fees, costs and disbursements of this civil action.

13.     That Plaintiffs have such other and further relief as the Court may deem just and proper.

Dated:  August 7, 2008
New York, New York

KALOW & SPRINGUT LLP
Milton Springut, Esquire
Tal S. Benschar, Esquire
488 Madison Avenue, 19th Floor
New York, New York 10022

By:_____
Milton Springut (MS6571)
Tal. S. Benschar (TSB0838)

11

JUDGE HELLERSTEIN

08 CV 7078

Donald J. Kennedy
Carter Ledyard & Milburn LLP
Two Wall Street
New York, New York 10005-2072
Tel. No. 212-238-8707
Attorneys for Plaintiff
Star Tankers Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
Star Tankers Ltd.,                                          :
                                                            :
                        Plaintiff,                          :
                                                            :       08 Civ.
                                                            :
            - against -                                     :       ECF CASE
                                                            :
                                                            :       VERIFIED COMPLAINT
Chem. Tankers C.V. and Chemship B.V.,                       :
                                                            :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------X

RECEIVED
AUG 08 2008
U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiff Star Tankers Ltd. ("Star Tankers" or "Plaintiff"), by and through its

attorneys, Carter Ledyard & Milburn LLP, as and for its Verified Complaint against the

Defendant, Chem Tankers C.V. and Chemship B.V. (collectively "Defendants") alleges:

        1.      This is an admiralty and maritime claim within the meaning of Rule 9(h)

of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

2.    At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under the laws of the Isle of Man U.K. and owners of the M/T Yamamah ("Vessel").

3.    Chem Tankers C. V. was, at all material times, named as the charterer of the Vessel.

4.    Upon information and belief, Chem Tankers C.V. and Chemship B.V. were, and still are, foreign corporations or other business entities organized under, and existing by virtue of foreign laws, with a place of business in Maarssen, The Netherlands.

5.    Upon information and belief, Chemship B.V. at all material times was the successor in interest, alter ego, and doing business as Chem Tankers C.V.

6.    There was a voyage charter party dated April 10, 2008, for the Vessel between Star Tankers and Defendants for a voyage from New Orleans and Houston to Rotterdam and Antwerp with a cargo of various grades of bio-fuel (the "Charter Party") Ex. 1. Rider clauses to the Charter Party provide for arbitration of disputes in London in accordance with English law.

7.    The Defendants directed the Vessel during the time period from April 2008 to June 2008, to New Orleans and Houston for loading and Rotterdam and Antwerp for discharge.   The vessel exceeded the allowed laytime and incurred demurrage in the amount of $129,028.09.  A copy of Star Tanker's demurrage invoice is attached as Ex. 2.

8.    Star Tankers has incurred damages arising out of Defendants' breach of the Charter Party, namely the demurrage, in the net amount of $129,028.09.

6359415.1

9.     However, Defendants' have failed and refused to satisfy the amount due to Plaintiff as a result of Defendants' have breached the Charter Party.

10.    Costs and attorneys' fees are routinely awarded to the prevailing party under English Arbitration Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in arbitration.

| | | | |
|---|---|---|---|
| A. | On the principal claim: | $129,028.09 | |
| B. | 3 years interest @6% per annum | $23,225.06 | |
| C. | Attorneys' fees and costs: | $75,000 | |
| | **Total** | $227,253.15 | |

## SECOND CAUSE OF ACTION (VEIL PIERCING)

11.    Plaintiff repeats and realleges the allegation in paragraphs 1 through 10 of the Complaint as fully set forth herein.

12.    Upon information and belief defendant Chemship B.V. totally dominated and controlled Chem Tankers C.V., commingled funds and caused funds to be transferred between corporations without appropriate documentation, failed to observe corporate formalities, failed to maintain an arms length relationship with Chem Tankers C.V., and failed to adequately capitalize Chem Tankers C.V. As a result, Chem Tankers C.V. lacks an individual identity apart from Chemship B.V. and has operated as a single economic entity serving the business of Chemship B.V.

13.    Upon information and belief, Chemship B.V. is the successor in interest to Chem Tankers C.V.

6359415.1

3

14.    As a result of the foregoing course of conduct, the corporate veil should be pierced and Chemship B.V. should be liable under the Charter Party as the alter ego of Chem Tankers C.V.

15.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

16.    Upon information and belief, Defendants have, or will have during the pendency of this action, tangible or intangible property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, American Express Bank, Bank of America, N.A., Bank of New York, Barclay's Bank, Citibank, N.A., Deutsche Bank Trust Co. Americas, Fortis Bank, HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., La Salle Bank, N.A., Standard Chartered Bank, UBS AG, U.S. Bank N.A., Wachovia Bank, N.A. and/or Wells Fargo Bank, N.A. which is due and owing to the Plaintiff.

17.    Star Tankers seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of Chem Tankers C.V. and Chemship B.V. held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, compelling them to arbitrate the claims asserted by Star Tankers, and to secure the Plaintiff's claim as described above.

6359415.1

4

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant Chem Tankers C.V. and Chemship B.V., citing it to appear and answer under oath all the matters alleged in the Verified Complaint.

B.    That since the Defendant Chem Tankers C.V. and Chemship B.V. cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, American Express Bank, Bank of America, N.A., Bank of New York, Barclay's Bank, Citibank, N.A., Deutsche Bank Trust Co. Americas, Fortis Bank, HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., La Salle Bank, N.A., Standard Chartered Bank, UBS AG, U.S. Bank N.A., Wachovia Bank, N.A. and/or Wells Fargo Bank, N.A. which is due and owing to the Plaintiff, in the amount of $227,253.15 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint.

C.    That this Court recognize and confirm any arbitration award or judgment rendered on Plaintiff's claims herein as a Judgment of this Court.

6359415.1

D.    That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof; and

E.    That the Plaintiff has such other, further and different relief as the Court

may deem just and proper.

Dated: August 8, 2008
      New York, New York

                            Carter Ledyard & Milburn LLP
                            Attorneys for Plaintiff,
                            Star Tankers Ltd.

By:    Donald J. Kennedy
                            Two Wall Street
                            New York, New York  10005-2072
                            Tel. 212-732-3200
                            Fax: 212-732-3232

## **ATTORNEY'S VERIFICATION**

STATE OF NEW YORK   )
                         )  ss.:
COUNTY OF NEW YORK  )

1.      My name is Donald J. Kennedy.

2.      I am over 18 years of age, of sound mind, capable of making this verification, and fully competent to testify to all matters stated herein.

3.      I am a partner in the firm of Carter Ledyard & Milburn LLP, attorneys for the Plaintiff

4.      I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.      The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

6359415.1

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated: New York, New York
       August 8, 2008

_____
Donald J. Kennedy

# EXHIBIT 1

**Andy Jones**

| | |
|---|---|
| **Van:** | RVB Shipbrokers B.V. [all@rvbshipbrokers.nl] |
| **Verzonden:** | donderdag 10 april 2008 17:02 |
| **Aan:** | AlendalMain |
| **Onderwerp:** | Yamamah - Chem Tankers |
| **Bijlagen:** | Yamamah Q88_21February2008.pdf; Yamamah - Chem-Tankers.rtf |

Andy/Ruud

We herewith confirm that chrtrs hve lifted all their subjects we therefore hve a clean fixture on follw terms and conditions

**1. STATUS**
Clean fixture

Strictly private and confidential – no reporting to third parties

**2. CHARTERPARTY PLACE AND DATE**
Spijkenisse, 10/04/08

**3. BROKERS**
RVB Shipbrokers BV

**4. CHARTERERS**
Chem tankers CV, Maarsen

**5. OWNERS**
Star Tankers Ltd, Isle of Man

**6. VESSEL**
m/t yamamah - q88 attached

| | |
|---|---|
| dwt | 28,053 mts |
| loa | 170.54m |
| beam | 25.3m |
| draft | 11.09m |
| built | 1977 |
| class | dnv |

imo2 chemtanker
stainless steel and coated tanks
pandi   american club

**7. LAST CARGOES**
1st   UAN or palm
2nd   phos or palm
3rd   palm

Last 3 cargoes : on FOSFA acceptable and Clean Unleaded

**8. VESSELS ITINERARY**
programme   19/4   Donaldsonville
                    23/4   loadready  in either Nola or Houston

**9. LAYDAYS/CANCELLING DATE**
Commencing 20/04/2008
Cancelling date/time 27/04/2008

**10. CARGO SIZE**
Full cargo 26500 mts with 5%  less or upto 27000 mts in chopt

10-4-2008

**11. CARGO DESCRIPTION**
various grades bio-fuels ,wvns

**12. LOADING PORT(S)**
1sp/b  Nola followed by 1sp/b Houston where avail draft 11.0m fw
vsls eta 23rd of april

**13. DISCHARGING PORT(S)**
1sp/b Antwerp a/o 1sp/b Rotterdam where 11m fw draft avail a/o 1sp/b Flushing in chopt

**14. FREIGHTRATE**
USD 41.50 pmt bss 2/2
Reduction for saved ports  :
for  New  Orleans less usd 25.000 lumpsum/ Houston less usd 45.000 lumpsum/Antwerp less usd 70.000
lumpsum/ Rotterdam less usd 55.000 lumpsum
Extra for  additional port
for Flushing usd 46000 lumpsum

**15. FREIGHT PAYABLE TO**
payable 6 banking days after loading

**16. LAYTIME**
200/200 tph L/D  shinc

**17. DEMURRAGE**
USD 17,000 pdpr

**18. CHARTERPARTY FORM**
Asbatankvoy  c/p

**19. SPECIAL PROVISIONS**
Chrtrs Agents bends

**20. COMMISSIONS**
2.5% ttl comms on f/d/d to RVB Shipbrokers BV, incl 1.25% adcom deductable at source

**21. ATTACHEMENTS TO THIS CHARTERPARTY**
Yamamah - Chem-Tankers logically amended

end

thks yr support in concluding this fixture

Brgds
*Ruud Rijpstra*
RVB Shipbrokers BV

☎
office    +31 181 655555
direct    +31 181 655557
mobile   +31 653 927626

✉ all@rvbshipbrokers.nl
http://www.rvbshipbrokers.nl

--------------------------------------------------
This message is intended only for the named recipient and may contain confidential, proprietary or legally
privileged information. No confidentiality or privilege is waived or lost by any misdirected transmission.
If you receive this message in error, please notify us immediately by return e-mail and delete this message
from your system. If you not the intended recipient, you must not use, disclose, distribute or copy any part of
this message.
--------------------------------------------------

10-4-2008

**Rider clauses Yamamah/Chem-Tankers**

**_CONTRACTING PARTIES_**

CHARTERERS:        CHEM-TANKERS CV, MAARSSEN, NETHERLANDS

OWNERS:        STAR TANKERS LTD, ISLE OF MAN

**_ROUTE_**

A)    CARGOES SHALL BE LOADED AT ONE SAFE BERTH HOUSTON, TEXAS

B)    CARGOES SHALL BE DISCHARGED AT ONE SAFE BERTH AND OR ONE SAFE
PORT/BERTH ANTWERP AND / OR ROTTERDAM A/O FLUSHING.  IN CASE VESSEL
NEEDS TO CALL A SECOND BERTH WITHIN DESIGNATED PORT, CHARTERER WILL PAY
FOR ALL SHIFTING EXPENSES AND TIME TO COUNT AS USED LAYTIME

C)    OWNERS AGREE TO COMPLY WITH THE PORT REGULATIONS CURRENTLY IN FORCE AT
PORTS OF LOADING AND DISCHARGE, PLUS ANY REASONABLE AMENDMENTS TO SUCH
REGULATIONS PROVIDED SUCH AMENDMENTS TO REGULATIONS DO NOT REQUIRE
FUNDEMENTAL CHANGES IN THE CONSTRUCTION OR LAYOUT OF THE SHIP, NOR
SIGNIFICANT ADJUSTMENTS TO THE OPERATING PROCEDURES ONBOARD SHIP.

1

## PERFORMING TONNAGE

A.    THE OWNER WARRANTS THAT, DURING THE TERM OF THIS CHARTER PARTY, THE PERFORMING VESSEL(S) IS FULLY CLASSIFIED FOR THE CARRIAGE OF CHARTERER'S CARGO (ES) AND COMPLIES WITH ALL LOCAL, NATIONAL AND INTERNATIONAL LAWS, RULES AND REGULATIONS RELEVANT TO THE SAID CARGO (ES) AND TRADE ROUTE SET FORTH IN THIS CHARTER PARTY AND CARRIES ALL NECESSARY, VALID CERTIFICATES TO THIS EFFECT, THIS INCLUDES, BUT NOT LIMITED TO IMO, MARPOL, VARIOUS U.S. COAST GUARD RULES AND REGULATIONS, OPA '90/COFK VAPOR RECOVERY AND THE ISM CODE.

B.    THE OWNER WARRANTS THAT: THE VESSEL(S) WILL COMPLY WITH THE PROCEDURES AND REGULATIONS OF THE LOADING AND DISCHARGING TERMINALS.

C.    THE OWNER WARRANTS THAT THEY AND THE VESSEL'S CREW ARE FAMILIAR WITH THE CHARACTERISTICS OF THE CARGO(ES), ITS HANDLING AND SAFETY REQUIREMENTS AND WILL FOLLOW ALL RELEVANT LAWS, RULES, REGULATIONS AND CARGO HANDLING INSTRUCTIONS, IF ANY, OF THE CHARTERER AND/OR THE SURVEYOR.

## DEMURRAGE

THE CHARTERER SHALL NOT BE OBLIGATED TO PAY ANY CLAIM FOR DEMURRAGE, UNLESS THE CLAIM, ALONG WITH SUPPORTING DOCUMENTS, (INCLUDING, BUT NOT LIMITED TO, VESSELS TIME SHEETS SIGNED BY SHIP'S AGENT PROVIDED SUCH SIGNATURE IS READILY AVAILABLE AND COPIES TO BE ACCEPTED AS WELL), IS RECEIVED BY THE CHARTERER  WITHIN THIRTY (30) DAYS FROM DATE OR COMPLETION OF DISCHARGE OF CHARTERER'S CARGO.

## SHIFTING AND LAYTIME:

INTENTION LOADING AT VOPAK DEER PARK HOUSTON

DISCHARGE ROTTERDAM A/O ANTWERP A/O FLUSHING

SHIFTING CHARGE WITHIN PORT OF HOUSTON TO ANOTHER BERTH: USD $8,000.00 AND TIME
        TO COUNT AS USED LAYTIME


LAYTIME:      200/200 - SHINC REVERSIBLE


## CLEANING CLAUSE

PERFORMING VESSEL IS TO CLEAN TANKS, LINES; PUMPS ALLOCATED FOR THE CARRIAGE OF CHARTERER'S CARGO TO THE SATISFACTION OF CHARTERER'S INSPECTOR. IF CHARTERER'S INSPECTOR AT LOAD PORT IS NOT SATISFIED THAT THE SHIP'S TANKS, LINES OR PUMPS ARE SUFFICIENTLY CLEAN FOR THE CARRIAGE OF CHARTERER'S CARGO, THEN SHIP IS TO EFFECT FURTHER CLEANING AT OWNER'S EXPENSE AND TIME TAKEN FOR SUCH ADDITIONAL CLEANING NOT TO COUNT AGAINST PORT-TIME. IF TANKS CONTINUE TO BE UNACCEPTABLE AFTER TWENTY-FOUR (24) HOURS OF ADDITITONAL CLEANING, CHARTERERS HAVE THE RIGHT TO CANCEL THE SHIP, REQUESTING OWNERS TO NOMINATE AN ALTERNATIVE PERFORMING VESSEL ON THE SOONEST AVAILABLE DATES.

2

## ETA CLAUSE

OWNERS TO ADVISE CHARTERERS AND LOADPORT AGENTS THE PERFORMING SHIP'S ESTIMATED TIME OF ARRIVAL AT BOTH LOAD AND DISCHARGE PORTS 5/3/2/1 DAYS, WHERE APPLICABLE, IN ADVANCE OF ARRIVAL AT LOAD PORT. AFTER SAILING FROM LOAD PORT, DAILY ETA'S OF ARRIVAL AT DISCHARGE PORT TO BE ADVISED TO DISCHARGE PORT AGENTS AND CHARTERERS. ANY ALTERATION OF ETA BEYOND TWELVE (12) HOURS TO BE ADVISED WITHOUT DELAY.

## HEATING

IF APPLICCABLE CHARTERER'S CARGO TO BE HEATED AS PER CHRTR'S INSTRUCTIONS.  PER TANK HEATING - IF REQUIRED - IS USD $500.00 FOR ENTIRE DURATION OF VOYAGE.

## PUMPING CLAUSE

OWNERS WARRANT THAT PERFORMING SHIPS WILL DISCHARGE AT AN AVERAGE RATE OF 500 METRIC TONS PER HOUR AGAINST A BACKPRESSURE OF 100 PSI AT VESSEL'S RAIL, PROVIDING SHORE FACILITIES PERMIT.

## DRUG & ALCOHOL CLAUSE

OWNERS WARRANT THAT THEY HAVE A POLICY ON DRUG & ALCOHOL ABUSE (POLICY) APPLICABLE TO THEIR VESSELS WHICH MEETS OR EXCEEDS THE STANDARDS IN THE 'OIL COMPANIES INTERNATIONAL MARINE FORUM GUIDELINES FOR THE CONTROL OF DRUGS & ALCOHOL ONBOARD SHIP'. UNDER THE POLICY, ALCOHOL IMPAIRMENT SHALL BE DEFINED AS A BLOOD / ALCOHOL CONTENT OF 40 MG / 100 ML OR GREATER - THE APPROPRIATE SEAFARERS TO BE TESTED SHALL BE ALL VESSEL'S OFFICERS AND THE DRUG / ALCOHOL TESTING AND SCREENING SHALL INCLUDE UNANNOUNCED TESTING IN ADDITION TO ROUTINE MEDICAL EXAMINATIONS.. AN OBJECTIVE OF THE POLICY SHOULD BE THAT THE FREQUENCY OF UNANNOUNCED TESTING BE ADEQUATE TO ACT AS AN EFFECTIVE ABUSE DETERRENT, AND THAT ALL OFFICERS BE TESTED AT LEAST ONCE A YEAR THROUGH A COMBINED PROGRAMME OF UNANNOUNCED TESTING AND ROUTINE MEDICAL EXAMINATIONS. THE OWNER WARRANTS THAT THE POLICY WILL REMAIN IN EFFECT DURING THE TERM OF THE CONTRACT AND THAT THE OWNER SHALL EXERCISE DUE DILIGENCE TO ENSURE THAT THE POLICY IS COMPLIED WITH. IT IS UNDERSTOOD THAT AN ACTUAL FINDING OF IMPAIRMENT DURING TESTING SHALL NOT IN AND OF ITSELF MEAN THAT THE OWNER HAS FAILED TO EXERCISE DUE DILIGENCE.

## OIL POLLUTION CLAUSE

OWNERS WARRANT THAT THEY HAVE IN PLACE INSURANCE COVER FOR THE MAXIMUM AVAILABLE ON OFFER THROUGH THE INTERNATIONAL GROUP OF PROTECTION & INDEMNITY CLUBS (CURRENTLY US$ 1,000 MILLION) AND THAT THIS COVER WILL REMAIN IN PLACE FOR EACH SHIP THROUGHOUT THE PERIOD OF THIS CONTRACT.

## 21) HULL & MACHINERY INSURANCE

OWNERS WARRANT THAT THEY HAVE IN FULL FORCE AND EFFECT HULL & MACHINERY INSURANCE PLACED THROUGH REPUTABLE BROKERS ON INSTITUTE TIME CLAUSES - HULL 1/10/83 FOR EACH PERFORMING SHIP.

## OIL POLLUTION CLAUSE

OWNERS WARRANT THAT THROUGHOUT THE DURATION THE DURATION OF THIS CONTRACT THE VESSELS WILL BE: -

1)      A MEMBER OF THE 'INTERNATIONAL TANKER OWNERS POLLUTION FEDERATION LTD'

2)      ENTERED IN A FIRST CLLASS PROTECTION AND INDEMNITY (P+I) CLUB.

## ARBITRATION

ANY DISPUTE ARISING DURING THE EXECUTION OF THIS CONTRACT SHALL BE SETTLED IN LONDON ACCORDING TO ENGLISH LAW. OWNERS AND CHARTERERS SHALL EACH APPOINT ONE (1) ARBITRATOR WHO SHALL HEAR AND DECIDE THE DISPUTE. IF THE TWO (2) ARBITRATORS CANNOT AGREE THEY SHALL APPOINT AN UMPIRE WHOSE DECISION SHALL BE FINAL. SHOULD ONE OF THE PARTIES NEGLECT OR REFUSE TO APPOINT AN ARBITRATOR WITHIN TWENTY-ONE DAYS AFTER RECEIPT OF REQUEST BY THE OTHER PARTY, THE SINGLE ARBITRATOR APPOINTED SHALL HAVE THE RIGHT TO DECIDE ALONE, AND HIS DECISION SHALL BE BINDING ON BOTH PARTIES.

## CHEMICAL EMERGENCY RESPONSE CLAUSE

THE OWNER WARRANTS THAT IT HAS A WRITTEN CHEMICAL EMERGENCY RESPONSE PLAN APPLICABLE TO THE VESSEL AND REASONABLY ACCEPTABLE TO CHARTERER WHICH WILL BE PUT TO USE IN THE EVENT OF A CHEMICAL SPILL., EMERGENCY OR INCIDENT. SUCH PLAN AT A MINIMUM SHALL INCLUDE THE VESSELS DESIGNATED RESPONSE COORDINATOR AND THE COMMUNICATIONS PROCEDURES BETWEEN OWNER, OPERATOR AND CHARTERER. THIS PLAN SHALL BE AVAILABLE TO THE CHARTERER AT ALL TIMES UPON REQUEST.

## WEATHER DELAYS

DELAYS IN BERTHING FOR LOADING OR DISCHARGING AND ANY DELAYS AFTER BERTHING, WHICH ARE DUE TO WEATHER CONDITIONS, (INCLUDING FOG), SHALL COUNT AS ONE HALF TIME OR, IF ON DEMURRAGE, AT ONE HALF DEMURRAGE RATE.

## PRIVATE AND CONFIDENTIAL

 ALL TERMS AND CONDITIONS OF THIS CHARTER PARTY TO BE KEPT STRICTLY PRIVATE AND CONFIDENTIAL.

## AMS CLAUSE:

CHARTERERS ARE TO ENSURE THAT THE 'SHIPPER', 'NOTIFY' AND 'CONSIGNEE' SECTIONS IN EACH BILL OF LADING CONTAIN A COMPLETE CORPORATE NAME, STREET ADDRESS AND CONTACT NUMBER (PHONE AND/OR FAX) AS WELL AS A PROPER CARGO DESCRIPTION PLUS REQUIRED MARPOL INFORMATION.

4

## BIMCO ISPS CLAUSE (REVISED)

(A)

(I) FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLAS (ISPS CODE) IN RELATION TO THE VESSEL, THE OWNERS SHALL PROCURE THAT BOTH THE VESSEL AND "THE COMPANY" (AS DEFINED BY THE ISPS CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE RELATING TO THE VESSEL AND "THE COMPANY". UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) TO THE CHARTERERS. THE OWNERS SHALL PROVIDE THE CHARTERERS WITH THE FULL STYLE CONTACT DETAILS OF THE COMPANY SECURITY OFFICER (CSO). FOR VOYAGES TO OR FROM UNITED STATES PORTS, OWNERS WARRANT THAT THE VESSEL SHALL COMPLY WITH THE REQUIREMENTS OF THE U.S. MARITIME TRANSPORTATION SECURITY ACT 2002 AND THE U.S. COAST GUARD REGULATIONS IMPLEMENTING THIS LEGISLATION (MTSA).

(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE OWNERS OR "THE COMPANY" TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE, MTSA, OR THIS CLAUSE SHALL BE FOR THE OWNERS' ACCOUNT.

(B)

(I) THE CHARTERERS SHALL PROVIDE THE CSO AND THE SHIP SECURITY OFFICER (SSO)/MASTER WITH THEIR FULL STYLE CONTACT DETAILS AND ANY OTHER INFORMATION THE OWNERS REQUIRE TO COMPLY WITH THE ISPS CODE AND MTSA.

(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE CHARTERERS TO COMPLY WITH THIS CLAUSE SHALL BE FOR THE CHARTERERS' ACCOUNT AND ANY DELAY SHALL COUNT AS LAYTIME , OR AS TIME ON DEMURRAGE, IF ON DEMURRAGE.

(C) PROVIDED THAT THE DELAY IS NOT CAUSED BY THE OWNERS' FAILURE TO COMPLY WITH THEIR OBLIGATIONS UNDER THE ISPS CODE OR MTSA, THE FOLLOWING SHALL APPLY:

(I) NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER PARTY, THE VESSEL SHALL BE ENTITLED TO TENDER NOTICE OF READINESS EVEN IF NOT CLEARED DUE TO APPLICABLE SECURITY REGULATIONS OR MEASURES IMPOSED BY A PORT FACILITY OR ANY RELEVANT AUTHORITY UNDER THE ISPS CODE OR MTSA.

(II) ANY DELAY RESULTING FROM MEASURES IMPOSED BY A PORT FACILITY OR BY ANY RELEVANT AUTHORITY UNDER THE ISPS CODE SHALL COUNT AS LAYTIME OR TIME ON DEMURRAGE IF ON DEMURRAGE. IF THE DELAY OCCURS BEFORE LAYTIME HAS STARTED OR AFTER LAYTIME OR TIME ON DEMURRAGE HAS CEASED TO COUNT, OWNERS SHALL BE COMPENSATED BY THE CHARTERERS AT THE DEMURRAGE RATE.

(III) CHARTERERS SHALL BE RESPONSIBLE FOR ENSURING THAT THE PORT FACILITIES TO WHICH THEY ORDER OWNERS TO CALL ARE ISPS AND MTSA COMPLIANT. IF ANY ONE OR MORE OF THE PORT FACILITIES ARE NOT COMPLIANT, THEN ANY ADDITIONAL COSTS AND/OR DELAYS ACTUALLY INCURRED, INCLUDING BUT NOT LIMITED TO THE TIME REQUIRED OR COSTS INCURRED BY THE VESSEL IN TAKING ANY ACTION OR ANY SPECIAL OR ADDITIONAL SECURITY MEASURES OR UNDERGO ADDITIONAL SECURITY INSPECTIONS, AT THAT PORT OR ANY OF THE NEXT TEN (10) PORT CALLS, AS A RESULT OF SUCH NON-COMPLIANCE, SHALL BE FOR CHARTERERS' ACCOUNT.

(D) NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER PARTY, ANY ADDITIONAL COSTS OR EXPENSES WHATSOEVER SOLELY ARISING OUT OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT FACILITY OR ANY RELEVANT AUTHORITY IN ACCORDANCE WITH THE ISPS CODE OR MTSA INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, TUG ESCORTS, PORT SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE FOR CHARTERERS' ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM THE OWNERS' FAILURE TO COMPLY WITH THE REQUIREMENTS OF THE

5

ISPS CODE OR MTSA. ALL MEASURES REQUIRED BY THE OWNERS TO OBTAIN AND MAINTAIN THE INTERNATIONAL SHIP SECURITY CERTIFICATE SHALL BE FOR THE OWNERS' ACCOUNT. (E) IF EITHER PARTY MAKES ANY PAYMENT WHICH IS FOR THE OTHER PARTY'S ACCOUNT ACCORDING TO THIS CLAUSE, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY.

### VEG OIL PRE WASH CLAUSE

(A) IF FOLLOWING DISCHARGE OF THE CARGO THE VESSEL IS REQUIRED TO PRE-WASH ITS CARGO TANKS PRIOR TO LEAVING THE DISCHARGE PORT IN ORDER TO COMPLY WITH MARPOL 73/78 ANNEX II OR ANY OTHER NATIONAL OR LOCAL LAWS OR REGULATIONS, THE CHARTERERS SHALL PAY COMPENSATION IN AN AMOUNT EQUIVALENT TO THE RATE OF DEMURRAGE STIPULATED IN THE CHARTER PARTY FOR ALL TIME AFTER COMPLETION OF DISCHARGE UNTIL THE COMPLETION OF WASHING AND DISPOSAL OF THE TANK WASHINGS AND/OR CARGO RESIDUES. THE DISPOSAL OF TANK WASHINGS AND/OR CARGO RESIDUES SHALL BE ARRANGED AND PAID FOR BY THE CHARTERERS.

(B) IN THE EVENT THAT THE VESSEL IS ORDERED TO VACATE THE DISCHARGING BERTH TO PERFORM THE PRE-WASHING OF ITS CARGO TANKS AS PROVIDED UNDER SUB-CLAUSE (A), ANY SHIFTING EXPENSES SHALL BE FOR THE CHARTERERS' ACCOUNT.

### NITROGEN CLAUSE

IN CASES WHEN CHARTERERS / SHIPPERS REQUIRE THE CARGO TO RECEIVE A NITROGEN BLANKET, SUCH NITROGEN BLANKET TO BE SUPPLIED BY SHIPPERS AT LOADING INSTALLATION AT THEIR EXPENSE. TIME USED FOR THIS OPERATION TO COUNT AS PORT-TIME. OWNERS WILL MAINTAIN NITROGEN BLANKET DURING TRANSIT FOR A COST OF USD $500 PER TANK OR MAXIMUM OF USD $5000.00 (FIVE THOUAND) 2500.00 PER VOYAGE.

### ISM CLAUSE

OWNERS WARRANT THAT THE PERFORMING VESSELS UNDER THIS COA SHALL COMPLY WITH THE REQUIREMENTS OF THE ISM CODE. UPON REQUEST OWNERS SHALL PROVIDE A COPY OF THE RELEVANT DOCUMENT OF COMPLIANCE (DOC) OR THE SAFETY MANAGEMENT CERTIFICATE TO THE CHARTERERS

### CHARTER PARTY
THIS CONTRACT OF AFFREIGHTMENT TO BE BASED ON ASBATANKVOY

### RESPONSIBLE CARE CLAUSE

(A)     COMMITMENT - OWNER AND CHARTERER ARE EACH FULLY COMMITTED TO AND SHALL ABIDE BY THE PRINCIPLES OF RESPONSIBLE CARE AS ESPOUSED BY THE EUROPEAN CHEMICAL INDUSTRY COUNCIL AND THE AMERICAN CHEMISTRY COUNCIL, RESPECTIVELY.

(B)     COMPLIANCE - OWNER AND CHARTERER ACKNOWLEDGE THE IMPORTANCE OF HANDLING PRODUCT IN A MANNER THAT WILL ENSURE THE SAFETY OF PEOPLE AND THE PROTECTION OF THE ENVIRONMENT. OWNER AND CHARTERER AGREE THEY WILL USE, HANDLE, STORE, TRANSPORT AND DISPOSE OF PRODUCT IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS. OWNER AND CHARTERER (IN EITHER CASE, HEREIN REFERRED TO AS THE "NOTIFYING PARTY") SHALL HAVE THE RIGHT TO SUSPEND DELIVERY OR RECEIPT OF PRODUCT UPON THIRTY (30) DAYS PRIOR WRITTEN NOTICE TO THE OTHER PARTY (HEREIN REFERRED TO AS THE "RECEIVING PARTY") IF

THE RECEIVING PARTY IS NOT COMPLYING WITH ALL SUCH APPLICABLE LAWS AND REGULATIONS. DELIVERY OR RECEIPT OF THE PRODUCT WILL RECOMMENCE AT THE TIME THE RECEIVING PARTY IS IN CONFORMANCE WITH ALL SUCH APPLICABLE LAWS AND REGULATIONS, AND ANY APPLICABLE STANDARDS AND PRACTICES DEVELOPED BY THE CHEMICALS INDUSTRY. IF THE RECEIVING PARTY IS UNABLE OR UNWILLING TO MEET SUCH REQUIREMENTS WITHIN NINETY (90) DAYS OF THE NOTIFYING PARTY'S NOTICE THAT IT IS SUSPENDING DELIVERY OR RECEIPT OF PRODUCT, THE NOTIFYING PARTY SHALL HAVE THE RIGHT TO TERMINATE THIS AGREEMENT.

(C)     RESPONSIBLE CARE® - OWNER WILL PROVIDE REASONABLE RESOURCES TO CHARTERER TO ASSIST IN PROMOTING THE RESPONSIBLE CARE® PRINCIPLES.

(d)     TRANSPORTATION INCIDENT REPORTING - THE FOLLOWING INCIDENTS MUST BE REPORTED IMMEDIATELY TO CHARTERERS AT +31 655 711 404.

   (I)  ANY INCIDENT INVOLVING INJURY OR CHEMICAL EXPOSURE TO EMPLOYEES, CONTRACTORS OR THE PUBLIC;

   (II)  EVENTS THAT COULD RESULT IN SIGNIFICANT AND IMMEDIATE ADVERSE IMPACTS TO THE HEALTH OF PEOPLE OR THE ENVIRONMENT;

   (III)  ANY SPILL OR RELEASE OF PRODUCT;

   (IV)  ANY INCIDENT/ACCIDENT WHICH CAUSES DAMAGE TO A CONTAINER CARRYING OWNER PRODUCT, LOADED OR CONTAINING RESIDUE;

   (V)  ANY INCIDENT IN WHICH THERE IS MEDIA INVOLVEMENT;

   (VI)  ANY INCIDENT INVOLVING OWNER PRODUCT WHICH REQUIRES THE EVACUATION OF PEOPLE;

   (VII)  ANY REGULATORY VIOLATION AS A RESULT OF TRANSPORTING OWNER PRODUCTS;

   (VIII)  EVENTS THAT RESULT IN INVESTIGATION BY A REGULATORY BODY; OR

   (IX)  VANDALISM TO OWNER PRODUCTS OR CONTAINERS.

# EXHIBIT 2



# ALENDAL TANKERS BV

Chem Tankers
Maarsen

dienstenstraat 15
p.o. box 1050
3160 ag  rhoon
the netherlands

tel. (31) 10 503 33 75
fax (31) 10 503 33 39
tlx 62003 ah nl
bankers: h.b.u. acc. 62.90.08.671

your ref.:

our ref. 2nd June  2008

rhoon,

## DEMURRAGE  INVOICE

MT  YAMAMAH
CP   10th April 2008
Voy  Bio-fuels from 2 x US Gulf to 2 x NW Europe

On behalf of Owners we hereby invoice you for demurrage as per the enclosed
Time Sheet and supporting documents

186.8280 hrs  @  US$ 17,000 pdpr          US$ 132,336.50
Less total 2.5% commission                $    3,308.41
                                          ---------------
                                          $ 129,028.09

Which, at the request of Star Tankers Ltd,  please pay to:

DnB NOR Bank ASA
Haugesund
Norway

account number    :   5337 04 92286
IBAN              :   NO74 5337 0492 286
SWIFT             :   DNBANOKKXXXX
in favour of      :   Torkel Alendal

all our activities are subject to the conditions of the dutch forwarding agents and to the conditions of the rotterdam shipbrokers all
filed with the registry of the rotterdam county court
"registered at chambers of commerce rotterdam under nr. 24199525"

TIME SHEET
--------------------

YAMAMAH
CP 10/04/2008
--------------------

New Orleans
---
| | | |
|---|---|---|
| 24/04/2008 | 0110 | anchored awaiting berth availability |
| | 0710 | laytime starts |
| 25/04 | 1825 | pilot onboard |
| | 2225 | all fast |
| 27/04 | 0700 | hose off |

Time use      24/0710 - 27/0700      71 hrs  50 mins
Less shifting  25/1825 - 25/2225       4 hrs  00 mins
                                       ----------
                                      67 hrs  50 mins          67.8333 hrs


Houston
---
| | | |
|---|---|---|
| 29/04/2008 | 0030 | all fast 1st berth |
| | 0205 | hose connected |
| 10/05 | 0345 | hose disconnected final berth |

Time used     29/0205 - 10/0345      265 hrs  40 mins          265.6667 hrs


Rotterdam
---
| | | |
|---|---|---|
| 26/05/2008 | 0800 | NOR tendered from anchorage awaiting berth avail |
| | 1400 | laytime starts |
| 27/05 | 0645 | anchor aweigh |
| 27/05 | 1100 | all fast 1st berth |
| | 1325 | hose connected to barge |
| 30/05 | 1035 | completed pre-wash last berth |

Time used     26/1400 - 30/1035      92 hrs  35 mins
Less shifting  27/0645 - 27/1100       4 hrs  15 mins
                                       ----------
                                      88 hrs  20 mins          88.3333 hrs

2.

Antwerp
----

| | | |
|---|---|---|
| 30/05/2008 | 1710 | NOR tendered. Awaiting berth avail |
| 30/05 | 2310 | laytime starts |
| | 2315 | proceeding in from anchorage |
| 31/05/2008 | 0745 | all fast 1st berth |
| | 1040 | hose connected |
| 01/06 | 2200 | hose disconnected last berth |

| | | | |
|---|---|---|---|
| Time used | 30/2310 - 01/2200 | 46 hrs  50 mins | |
| Less shifting | 30/2315 - 31/0745 | 8 hrs  30 mins | |
| | | ----------- | |
| | | 38 hrs  20 mins | 38.3333 hrs |

Allowed time
----

Total bl 26,833.865mt  @  200 tph load/200 tph disch  =  268.3386 hrs

Total time used:

| | |
|---|---|
| 67.8333 hrs | New Orleans |
| 265.6667 hrs | Houston |
| 88.3333 hrs | Rotterdam |
| 38.3333 hrs | Antwerp |
| ----------- | |
| 455.1666 hrs | total |
| 268.3386 hrs | allowed |
| ----------- | |
| 186.8280 hrs | hrs    demurrage    @    $17,000 pdpr   =   US$ 132,336.50 |